Christopher J. Sullivan, Esq.
NUTTER MCCLENNEN & FISH LLP
655 Third Avenue
New York, NY  10017
Telephone:  646-440-8000

Attorneys for Plaintiff Israel Academy of
Sciences and Humanities

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISRAEL ACADEMY OF SCIENCES AND HUMANITIES,<br><br>          Plaintiff,<br><br>      -against-<br><br>AMERICAN FOUNDATION FOR BASIC RESEARCH IN ISRAEL, INC.,<br><br>          Defendants. | Case No.  _____<br><br><br>**COMPLAINT** |

Plaintiff Israel Academy of Sciences and Humanities ("Plaintiff" or the "Academy"), by its attorneys, Nutter McClennen & Fish LLP, as and for its complaint against Defendant American Foundation for Basic Research in Israel ("AFBRI"), alleges upon knowledge with respect to its own acts and upon information and belief with respect to all other matters, as follows:

**Introduction**

1.    This is an action by an Israeli statutory corporation against its American affiliate to compel the turn-over of charitable donations that were paid to and are being held by the affiliate for the benefit of the Israeli corporation.

2.    Plaintiff Academy is the most prestigious academic body in Israel, a society comprised of Israel's leading scientists in all fields of research, in natural sciences, exact sciences,

social sciences, and humanities.  It is a national statutory non-profit corporation sponsored by the Israeli government for the advancement of scholarship and scientific research in Israel.  Within its authority, it directs the application of charitable contributions to scientific projects and scientists.

3.      Plaintiff has legal standing to bring this action on its own behalf because it has a special interest in the funds held by Defendant AFBRI and is entitled to a preference in the distribution of such funds.

4.      Plaintiff formed Defendant AFBRI in 1990 for the purpose of receiving donations in the United States procured by Plaintiff and then using those donations to fund grants for the advancement of basic scientific research in Israel in accordance with the goals set by Plaintiff.  The sole function of the Board of AFBRI over the years was to authorize the funding of charitable grants in Israel that are approved by Plaintiff and then submitted to the Board of AFBRI.

5.      In order to comply with applicable United States and New York State tax laws, AFBRI was set up as a non-profit New York corporation, pursuant to a neutrally worded Certificate of Incorporation and By-Laws, with the mandate to receive, manage and distribute charitable contributions in accordance with Plaintiff's express goals.  The mandate was accomplished by having Plaintiff solicit and obtain donations to AFBRI, which then managed and distributed the donations pursuant to the applications submitted by Plaintiff.

6.      From the late 1980's until the mid-1990's, Plaintiff solicited and procured donors of charitable contributions that were paid to AFBRI for the benefit of the charitable activities in Israel sponsored and supported by Plaintiff and the donors themselves.  Plaintiff established AFBRI for the purpose of fund raising in the United States and at all times was the real party in interest behind AFBRI.  The contributions obtained by Plaintiff were principally large grants, through four charitable funds described below, which were transferred to AFBRI prior to 1995 on

the express condition that the monies be used to enable Plaintiff to carry out its charitable aims and objectives for the advancement of basic research in Israel.

7.      For over 30 years, all of the charitable contributions received by AFBRI have been used exclusively to fund the grants and other charitable activities recommended by Plaintiff. AFBRI is presently holding approximately $17 million.

8.      At all relevant times until recently, the Board of AFBRI included members representing Plaintiff, notably Prof. Joshua Jortner, who was at one time President of Plaintiff and was subsequently appointed President of AFBRI, and Dr. Meir Zadok, at one time the Director General of Plaintiff who was also appointed Treasurer of AFBRI.

9.      Throughout the years, Plaintiff financed part of the salaries of AFBRI's employees, and the CFO of Plaintiff managed the financial activities of AFBRI.  As a natural result, Plaintiff had always direct access to AFBRI books and records.

10.      In 2014, Plaintiff and the Board of AFBRI and its then New York counsel, Michael Varet, Esq., reached a tentative agreement to shut down AFBRI as a private foundation, to dissolve the corporation, and to transfer the monies under its control to P.E.F. Israel Endowment Funds, Inc., a foundation that collects, administers, and transfers contributions from individual donors in the United States to non-profit organizations in Israel.  For various reasons, this agreement was never implemented and AFBRI continued to act as a caretaker of the charitable donations procured by Plaintiff from the four principal donor Funds.

11.      In 2016, Prof. Jortner asked the then Academy Director Dr. Zadok to employ and pay Prof. Jortner's secretary even though her job was to take care of AFBRI's affairs.  This arrangement was terminated by Prof Jortner and Dr. Zadok at the end of 2018, when the instant conflict with Plaintiff arose.

12.     Towards the end of 2016, Prof. Jortner and Dr. Zadok planned to purchase an apartment in Jerusalem for AFBRI's management, and to terminate Plaintiff's rights and involvement in AFBRI.  The purchase of the apartment was thwarted by Plaintiff's then president, but the other part of the plan started to gain momentum.

13.     Dr. Meir Zadok's role as Director General of Plaintiff was terminated on December 31, 2016.  Dr. Zadok immediately threatened the new Director General, Ms. Galia Finzi, that Plaintiff would no longer be entitled to special preference or priority with respect to the funds received by AFBRI for Plaintiff's benefit, and would have to apply for grants in the same manner as any other institute.  Plaintiff's then President and Vice President (who is now its current President) strongly objected to Dr. Zadok's threat.

14.     Following the termination of Dr. Zadok's employment by Plaintiff, and his threat to terminate Plaintiff's special interest in the funds held by AFBRI, Plaintiff's Council repeatedly asked that Dr. Zadok be replaced as Plaintiff's representative on AFBRI's Board.  One director of AFBRI, Michael Varet, Esq., strongly supported this demand by Plaintiff.  Despite negotiations, Plaintiff's demand was rejected, and Dr. Zadok was appointed to the Board of AFBRI anyway. When Michael Varet passed away in 2019, the situation quickly deteriorated.

15.     Beginning in May 2021, AFBRI refused to approve or to use the donations under its control and management to fund the standard requests submitted by Plaintiff.  The only reason given by AFBRI for refusing to do so was that Plaintiff had sent an attorney's letter to the Board of AFBRI complaining about its faulty behavior.  Since Plaintiff is the exclusive recipient of the monies held by AFBRI, the refusal to fund Plaintiff's submissions resulted in a tax penalty for not distributing a minimum amount of the corporation's income in a given year.

16.     In addition, and in contrast with past tradition, AFBRI has abruptly denied Plaintiff access to its books and records, and wrongfully withheld information from Plaintiff concerning donations and donor-advised endowments, thereby making it impossible for Plaintiff to verify exactly what funds are being improperly withheld by AFBRI and not used in accordance with the goals set by Plaintiff.

17.     In July 2021, Prof, Jortner, the President of AFBRI, transferred $90,000 from the monies held for Plaintiff to the personal account of Dr. Zadok, who is one of AFBRI's directors and who also acts as its Treasurer, without the knowledge or approval of the other members of the Board of AFBRI or Plaintiff.  The apparent purpose of the transfer was to compensate Dr. Zadok for pay that he claimed was owed by Plaintiff following the termination of his employment by Plaintiff.

18.     In a letter dated November 3, 2022, Prof. Jortner informed Plaintiff that he would no longer allow AFBRI to work with Plaintiff on charitable grants for the advancement of science in Israel, but instead would make all decisions himself regarding the allocation of the remaining donations in AFBRI's possession and control. Ironically, it was Prof. Jortner who, while acting as President of the Plaintiff prior to 1995, personally assured and guaranteed to donors to AFBRI that their contributions would be used exclusively to fund the activities of Plaintiff in Israel.

19.     By way of this action, Plaintiff seeks, *inter alia*: (i) to protect and recover the funds currently being held by AFBRI for Plaintiff's benefit, (ii) the imposition of a constructive trust over assets held by AFBRI on Plaintiff's behalf, (iii) an accounting, and (iv) damages for AFBRI's wrongful conduct.  Plaintiff also requests the removal of Dr. Zadok from AFBRI's board of directors.

**The Parties**

20.     Plaintiff Israel Academy of Sciences and Humanities is a statutory corporation that was established in 1961 by the State of Israel pursuant to the Israel Academy of Sciences and Humanities Law.  The Academy sees the advancement and development of basic research as an objective with national importance and sets as its aim the advancement and nurturing of basic research and scientific activity in Israel.  The Academy is currently comprised of 134 of Israel's most distinguished scholars and scientists who promote research in the sciences and humanities, advise the government on activities in those fields, and represent Israel in international bodies and conferences.  The Academy has a principal place of business in Albert Einstein Square in Jerusalem, Israel.

21.     Defendant AFBRI is a nonprofit organization that was established in 1990 in the United States, at the Academy's initiative, for the sole purpose of receiving donations and raising funds to be used for the advancement of basic scientific research in Israel, in accordance with the goals set by the Academy.  Defendant AFBRI has a principal place of business at 14 Penn Plaza, New York, New York.

**Jurisdiction and Venue**

22.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) because the claims are between a citizen of a State and a citizen or subject of a foreign state, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

23.     Venue is proper pursuant to 28 U.S.C. §1391(a)(2) because "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in the Southern District of New York.

## Statement of Facts

## The Background for AFBRI's Foundation

24.     Plaintiff's activities since its founding have been funded by government budget allocations, which were sufficient for its regular functioning.

25.     In the 1980's, basic scientific research in Israel was in a serious crisis, due to substantial budget cuts, which harmed the institutions of higher education.  The independent research funds of universities were significantly eroded and the research institutions in Israel were left with little or no sources of funds.  This lack of funds gave rise to the need to find an appropriate solution for the problem of funding basic research in Israel.

26.     In April 1985, after being approached by then Prime Minister Shimon Peres and in light of his explicit request, Plaintiff began creating a master plan for the advancement of basic research in Israel with an emphasis on the creation of significant sources of funding.

27.     For this purpose, Plaintiff's Council appointed a committee headed by its then (prior to 1995) President, Prof. Joshua Jortner.  Other members of the committee included Dr. Meir Zadok, the Director General of Plaintiff at the time, as well as Prof. Israel Dostrovski, Prof Jacob Ziv, Prof Shimon Amitzur, and Prof Natan Rotenstreich.

28.     The committee concluded, *inter alia*, that a substantial expansion was needed of the financing of basic research in Israel.  They proposed that this be achieved through the substantial increase of funding by the Government of Israel, and by establishing a body dedicated to the funding of basic research, with monies to be contributed by donors from across the Jewish diaspora.

29.     With the aim of receiving donations and raising funds for the advancement of science in Israel from Jews around the world and specifically from Jews in the United States,

7

Plaintiff decided to establish AFBRI.  At Plaintiff's initiative, AFBRI was founded in New York in 1990 as a public nonprofit corporation.

30.     In accordance with the corporate and tax law requirements in the United States and in order to preserve the tax exempt status of the donations made to AFBRI, the formation documents of AFBRI provided that it would operate for the advancement of basic science in Israel without stating explicitly that it would act for the benefit of Plaintiff.

31.     However, the established connection between Plaintiff and AFBRI was explicitly presented to the donors within the fundraising framework.  Namely, that AFBRI is an arm of Plaintiff, but is formally separate from it for tax reasons.  Accordingly, in the framework of Plaintiff's fundraising campaigns, AFBRI informed its donors, by its members, mainly by Prof. Jortner and Prof. Keynan, that it was a nonprofit organization founded for the sole purpose of receiving donations for Plaintiff.  On the basis of such representations, the various donors made donations to AFBRI for the benefit of Plaintiff.

32.     Indeed, it was Prof. Jortner who repeatedly explained to and assured donors that AFBRI had been established for the sole purpose of receiving contributions in the United States for the activities of Plaintiff in Israel.

33.     An example of this is the following letter, dated July 7, 1993 from Prof. Jortner to the donor Mr. Tauber:

> "The American Foundation for Basic Research in Israel, an American non-profit organization was established in the U.S. especially for the purpose of receiving contributions there for the activities of Israel Academy.  The American Foundation for Basic Research in Israel is organized under section 501(c) (3) of the IRS tax code.  All contributions to the American Foundation are fully tax deductible.  The Foundation is managed by Michael Varet, an attorney with Varet, Marcus and Fink, 53 Wall Street, New York, N.Y."

34.     In order to ensure Plaintiff's control of AFBRI, which holds assets designated for use by Plaintiff, Prof. Jortner (Plaintiff's President at the time), the late Prof. Alex Keynan, who was a special advisor to Prof. Jortner and who was the fund-raiser of the monies, and Plaintiff's then Director General, Dr. Meir Zadok, were appointed to the Board of AFBRI, as well as Michael Varet, Esq., who served as the lawyer and advisor to Baroness Batsheva de Rothschild, and Prof. Paul Marks, President of the Sloan Kettering Institute.

35.     In the mid 1990's, the status of AFBRI was changed from a public to a private fund. As a result, the Board of AFBRI was reconstituted to include a required number of United States citizens who were not affiliated with Plaintiff.  With the passing of time and the passing away of Varet and Keynan, additional members were appointed to the Board of AFBRI, two of whom, Nobel laureates Drs. Mike Brown and Roger Kornberg, recently resigned in protest over the problems that have surfaced regarding AFBRI's actions.  Another member, Prof Mark Ratner, has been suffering for years from neuro-medical problems that prevent him from fulfilling his role as a member of the Board. This has been known all along to Prof.  Jortner and Dr. Zadok, but they consistently refuse to replace him.

36.     Throughout the existence of AFBRI, Plaintiff has prioritized the activities and the objectives for which funds are donated to AFBRI, and is the only beneficiary of the charitable funds received by AFBRI.  Plaintiff, however, can approve transfers to other bodies, which indeed it has done regularly, by transferring sums to the ISF – the Israel Science Foundation, which in the past was part of the Academy, but since 1995 has been an independent body.

37.     Beginning in 1994, Plaintiff adopted a policy of no longer engaging in fundraising activities for AFBRI, and to the best of Plaintiff's knowledge AFBRI has not received additional funds in any significant amount since that time.  As a result, AFBRI simply acts as an umbrella

organization for the four separate Funds described below that were procured by Plaintiff prior to 1995.

### The Agreements with the Donors Explicitly Establish that the Funds are being Donated for the Benefit of the Academy

38.     On the express understanding that AFBRI was established for Plaintiff and that its purpose is to raise money for Plaintiff's support of basic research in Israel, third party donors were asked to transfer funds to AFBRI for the ultimate purpose of advancing basic scientific research in Israel.

39.     The agreements and related correspondence with the donors provide in a clear and unequivocal manner that the contributed funds are to be deposited in AFBRI's bank account, but are to be used to benefit the purposes which Plaintiff recommends for the advancement of science in Israel.  In practice, AFBRI acts as an umbrella organization for four separate Funds established by third party donors: the Revson Fund, the Tauber Fund, the Recanati Fund and the Batsheva de Rothschild Fund.

### (a)     The Revson Fund

40.     In 1987 the Revson Foundation issued a letter dated June 22, 1987, in which it stated its intention to donate $5 million to Plaintiff or to an entity affiliated with it:

> "RESOLVED: that $5,000,000 payable over five years at no more than $1,000,000 per year, be appropriated to the Israel Academy of Sciences and Humanities or a related non-governmental entity for an endowment to support the Basic Research Fund [...]"

41.     The related non-governmental entity referred to is the Israel Science Foundation (ISF), which was established by Plaintiff and acted as an integral part of Plaintiff although it has been independent of Plaintiff since 1995 and was separated administratively from it in 2014.  In the past, some grants designated by Plaintiff were administered by the ISF and some by Plaintiff.

In recent years, all such grants have been administered by Plaintiff.  Plaintiff's president serves as the Chairman of the ISF Council.

42.     Over the years, fund allocation requests were submitted by Plaintiff to AFBRI's Board for various projects, and subject to AFBRI's approval, funds were transferred from AFBRI to Plaintiff, which allotted the funds to the various activities, including ISF activities.

43.     In letters dated March 3, 1992 and December 6, 1993 to Mr. Eli Evans, the President of the Revson Foundation, Prof. Jortner confirmed that the donation was given to Plaintiff for support of the Basic Research Fund:

> "I know that the 1987 decision, taken by the Revson Foundation was not an easy one and therefore before addressing myself to the questions in your last letter, I would like to recall some of the events which led to your decision to allocate '$5 million dollars to the Israel Academy of Sciences and Humanities for an endowment to support the Basic Research Fund.'"

44.     The Donation Transfer Agreement used to evidence the donation from the Revson Fund makes clear that the beneficiary of the fund transfer to AFBRI is Plaintiff.  The form of Agreement used reads as follows:

> "GRANTEE: Israel Academy of Sciences and Humanities
> LEGAL NAME OF PAYEE: American Foundation for Basic Research in Israel
> AMOUNT OF GRANT: $550,000
> PURPOSE: To join with other funders to enable the Israel Academy of Sciences to continue funding several research projects for an additional year in the three areas identified by the new FIRST program [...]
> [•••]
> The Grantee agrees:
> 1.      To use the grant funds solely for the purpose described above and repay any portion which is not used for the purpose of the grant.
> [...]
> 4. Not to use any of the grant funds
> a.      [...]
> b.      [...]

11

> c.    to make any grants to individuals or to other organizations,
> except for the payment of stipends to fellows or honoraria or
> expenses of consultants. [...]"

45.    The Revson Fund was the spearhead of Plaintiff's fundraising via AFBRI. Following in its footsteps, AFBRI received more substantial donations between 1989-1995 from the Baroness Batsheva de Rothschild, from Mr. Leon Recanati on behalf of the Recanati family and companies in the IDB Group, as well as from the Tauber family.

### (b)    The Tauber Family Fund

46.    In a written agreement dated December 24, 1994, Dr. Laszlo Tauber clarified that the legal entity entitled to the Tauber family's donation is the "American Foundation for Basic Research in Israel," while underscoring in a subsequent letter dated September 27, 1995 that the donation was made for the benefit of Plaintiff:

> "To: Mr. Joshua Jortner
> President
> Israel Academy of Sciences and Humanities
> [...]
> From: Lazio N. Tauber, M.D.
> Date: September 22, 1995
> As you know, I has made a provision for the Israel Academy of
> Sciences and Humanities in the amount of $50,000 in my Charitable
> Remainder Trust."

47.    In a letter dated February 28, 1994 to the Tauber family, Prof. Jortner confirmed that the donated funds would be managed by AFBRI for Plaintiff:

> "Meanwhile we have received notice from the office of the Israel
> Bonds in the US confirming that you have purchased 250,000$ in
> Israel bonds in the name of the Israel Academy of Sciences and
> Humanities and transferred them to the American Foundation for
> Basic Research in Israel which is charitable trust, which receives
> and manages funds for the Israel Academy."

48.     In a letter dated September 27, 1995 to Dr. Tauber, Prof. Jortner also sent the contact details for Michael Varet, Esq., the Vice-President of AFBRI, while presenting him as the manager of the branch that handles the American donations for Plaintiff:

> "The office which deals with American Donations to the Israel
> Academy of Sciences and Humanities is the 'American Foundation
> for Basic Research in Israel'

49.     Plaintiff used the funds donated by the Tauber family through their transfer to the ISF for the purpose of awarding the George Klein prizes.

### (c)     The Recanati Fund

50.     In 1991, Leon Recanati made a charitable donation of $1 million to Plaintiff.

51.     The donation was paid through a Fund established for the benefit of Plaintiff's charitable activities in Israel, pursuant to documents that tracked the language of the Tauber documents quoted above.

### (d)     The B. de Rothschild Fund

52.     In 1994 the Baroness Batsheva de Rothschild donated to Plaintiff a Fund in her possession, containing an estimated $6 - 7 million.  The Fund was transferred to AFBRI under the name "the  Batsheva de Rothschild's Fund for the Advancement of Science in Israel." It was agreed that Plaintiff would manage the Fund in its existing form while preserving its objectives and its original mode of operation.

53.     The terms of the transfer of the Batsheva de Rothschild's Fund are expressed in a written agreement between Plaintiff and the Baroness de Rothschild.  According to the agreement, the Batsheva de Rothschild Fund, which was managed by the Baroness up to that point, was to be transferred first to AFBRI and then to the recipients designated by Plaintiff.

13

54.     In a letter dated May 7, 1990 from the Baroness  Batsheva de Rothschild to between Prof. Jortner, it was confirmed that the Fund was being transferred to Plaintiff:

> "The purpose of this letter is to set forth the understanding we have reached, as a result of discussions we have had over a period of time and your letter to me of 12 June 1989, concerning the proposed transfer by B. de Rothschild Foundation for the Advancement of Science in Israel, Inc., a charitable corporation organized under the Not-for-Profit Corporation Law of the State of New York, U.S.A. (the 'Foundation') and the Batsheva de Rothschild Fund for the Advancement of Science and Technology, an amuta organized under the law of Israel (the 'Fund'), to The Israel Academy of Sciences and Humanities (the 'Academy')."

55.     In order to complete the transfer of the Fund to Plaintiff pursuant to applicable tax laws, it was clarified in the framework of written agreements between the parties that the Fund would be transferred to Plaintiff or to a designated non-profit designed by and acting on behalf of Plaintiff, in this case AFBRI.  Thus, in an agreement dated June 15, 1992 between Plaintiff and the Baroness Batsheva de Rothschild, it is provided that:

> "...the Fund agrees to transfer to the Academy or to an 'amuta' designated by the Academy (hereafter the 'Amuta') all of the Fund's assets, to be expended by the Academy or the Amuta in such manner as shall be in accordance with aims and objectives of the Fund and the Academy, and in accordance with the exchange of letters, all as set hereunder."

56.     Following this agreement, which was signed by the Director General of Plaintiff at the time, Dr. Meir Zadok, it was further agreed in writing that AFBRI is bound by the agreement between Plaintiff and the Batsheva de Rothschild's Fund and that it was required to act in accordance with them:

> "3. The Academy shall ensure that if the Transferred funds are transferred to the Amuta, the Amuta shall be legally bound to comply in full with the provisions of this Agreement, and the Academy shall be responsible therefor."

14

57.     Then, in a written summary of these agreements dated January 31, 1995, it was clarified that this was the intention of the parties:

> "The funds of the B. de Rothschild Fund have been transferred to the American Foundation for Basic Research in Israel.   An American Foundation based in New York.
>
> The American Foundation will review yearly the income of the Fund and decide on the amount to be allotted to it.   These funds will be transferred to the Israel National Academy of Science [...] The accounting will be done by the Academy"

58.     Following the transfer of the Baroness de Rothschild's Fund in 1994, Plaintiff stopped raising money for AFBRI from other large donors.

59.     As a result, the principal activity of AFBRI became the management and allocation of the monies raised in the past.

## The Signatory Rights in AFBRI's Bank Account

60.     In September 1991, AFBRI opened two bank accounts at Israel Discount Bank of New York for the purpose of managing AFBRI's funds in the United States.   Pursuant to an AFBRI corporate resolution dated September 17, 1991, Plaintiff was named as one of the authorized signatories on the accounts and as a trustee in the management of the accounts.

61.     In 2019, however, AFBRI's outside accountant Ira Talbi reported to Plaintiff's Director General a discussion that he had with Dr. Meir Zadok on June 24, 2019.  In this discussion, Dr. Zadok stated that he had requested that following the passing of Michael Varet, Esq., who was AFBRI's vice president, the Board of AFBRI make him the exclusive signatory on the bank accounts holding AFBRI funds.

62.     Dr. Zadok further stated that, as far as he is concerned, AFBRI funds were designated to advance science in general and no longer specifically for Plaintiff.

15

**Plaintiff's Resources Served AFBRI's Management by Providing Managerial Services for the Everyday Functioning of AFBRI**

63.     From the time AFBRI was first established, Plaintiff has been a central player in AFBRI's financial management and investments, and has provided AFBRI with various managerial services: bookkeeping services, bureaucratic services and also financing of fundraising campaigns.

64.     To this end, Plaintiff has financed and supervised many of AFBRI's day-to-day activities.  Plaintiff's Chief Financial Officer provided AFBRI with money management services, charted AFBRI's investment policy, supervised the external accountants and provided auditing services in order to maintain proper bookkeeping.  Every year, Plaintiff's CFO signed documents verifying AFBRI's financial activities.  And Plaintiff also partly financed some salaries of its employees, including Prof. Jortner's secretary, whose role was defined as taking care of AFBRI matters.

65.     Plaintiff's involvement in the financial management and operations of AFBRI was based on the parties' recognition that the funds donated to AFBRI were meant to be used exclusively to fulfill the goals set by Plaintiff for the advancement of science in Israel.

**B.     Any Attempt to Divert AFBRI's Funds Away from Plaintiff is a Breach of the Agreements with the Donors**

66.     In June 2017, AFBRI informed Plaintiff in a telephone conversation for the first time that two of the directors on AFBRI's Board, Prof. Jortner and Dr. Meir Zadok, wanted to restructure AFBRI to become a direct fund for the financing of basic research in Israel, to which Plaintiff would have to submit requests and compete alongside other research entities.

67.     Following this telephone conversation, on July 24, 2017, Prof. Nili Cohen, then President of Plaintiff, and Prof. David Harel, then Vice-President of Plaintiff, informed Prof.

16

Jortner that Plaintiff objected to the proposed initiative of having Plaintiff compete with other research entities for the use of the funds raised for and belonging to Plaintiff. They also demanded that Dr. Meir Zadok, whose position with Plaintiff ended on December 31, 2016, be replaced as Plaintiff's representative on AFBRI's Board.

68.    No action was taken to implement this request, which was repeated in 2018, 2019 and 2020, from 2017 until the present time.

69.    On June 20, 2017, Plaintiff's Council sent a formal letter to Prof. Jortner and Michael Varet, Esq., in which it requested that a new representative of Plaintiff replace Dr. Meir Zadok on the Board of AFBRI. No response was received to this letter.

70.    On August 6, 2018, Plaintiff's Council sent another letter to Prof. Jortner, in which it repeated its position from June 20, 2017 regarding the need to replace Dr. Zadok on AFBRI's Board. In that letter Plaintiff stated that "AFBRI holds funds for the Academy's benefit whose purpose is to advance research in the State of Israel in accordance with what the Academy designates."

71.    In a letter dated August 16, 2018, Prof. Joshua Jortner responded to this letter, stating that the Academy's position according to which "[...] the AFBRI holds funds for the Academy's benefit whose purpose is the advancement of research in the State of Israel in accordance with what the Academy designates," is incorrect. He also stated that it is incorrect to present the AFBRI as a "corporation of the Academy".

72.    Prof. Jortner further added that the legal status of AFBRI renders Plaintiff a supported research entity that has no influence on AFBRI's activities. In addition, he rejected the demand to replace Dr. Zadok.

17

73.     In a written response dated October 25, 2018 by Plaintiff's Council to Prof. Jortner, the Council stated that it disagreed with his statements and reminded him of Plaintiff's connection and right to AFBRI's funds.

74.     In October 2019, Plaintiff's Council learned that Prof. Jortner had presented to AFBRI's Board his future plans for the funds held by AFBRI.  These plans included the transfer of the funds and the change of the signatory rights for the purpose of appropriating Plaintiff's rights, all in accordance with Prof. Jortner and Dr. Zadok's longstanding plans.  The aim of these plans is to change the nature of AFBRI to something that is in blatant contradiction to  the explicit and clear agreements with the donors, on the basis of which the funds were transferred to AFBRI in the first place.

75.     Following Michael Varet's passing, Prof. Jortner wrote in a letter to the AFBRI Board dated October 6, 2019:

> 'Meir Zadok and myself finalized the technical arrangements for the future transfer of funds of the Foundation according to the directions of the Board.  I attach a document regarding this issue.
>
> We have to consider recommendations for the research proposal submitted to the AFBRI by the Israel Academy of Sciences and Humanities for 2020. On Thursday, October 20, I shall send a separate letter to you concerning this grant proposal of the Israel Academy for your review and recommendations.
>
> Finally, and most important, we have to start planning future, new activities for the AFBRI.  This is essential for science in Israel...'

76.     According to Prof. Jortner, the objective of the "technical arrangements" is to enable Prof. Jortner and Dr. Zadok to exercise complete control over decisions regarding the allocation of funds held by AFBRI.  Thus, Prof. Jortner wrote:

> "……
>
> 3.     Bank payments and transfer of funds for grants from the Foundation's accounts will be authorized by the President of the

18

Board of Directors and by the Treasurer, according to the procedure approved by the Board (sections 4-6).

4.      Bank payments of sums up to 100,000 $ will be made by the signatories.  These payments will be authorized by the President or by the Treasurer and will be made by bank transfer.

5.      Bank payments exceeding 100,000 $ will be made by the signatories.  These payments will be authorized by both the President and the Treasurer and made by bank transfer.

6.      Grants will be authorized by the President and Treasurer and made by the signatories.  These grants will be made by wire transfer."

77.    On November 7, 2019, Plaintiff's Council sent a letter to all of the members of AFBRI's Board, objecting that the foregoing proposal contravenes the explicit and clear agreements with the third party donors and also breaches fiduciary duties owed to Plaintiff and AFBRI.  This letter contained a summary of the historical relationship and the connection between Plaintiff and AFBRI.

### C.    <u>Termination of Dr. Zadok's Position at AFBRI</u>

78.    When AFBRI was established by Plaintiff, Dr. Zadok – who at the time served as the General Director of the Academy – was appointed as a member of AFBRI's Board and as an officer of AFBRI (its treasurer).  The purpose of this appointment was solely to appoint a representative of Plaintiff as a director and officer of AFBRI.

79.    On December 31, 2016, Dr. Zadok's position as the Director General of Plaintiff ended, and he became a private individual who no longer represented Plaintiff.  Accordingly, his role also ended as Plaintiff's representative at AFBRI.  Therefore, it became necessary to appoint someone else to replace him.

80.    In light of the termination of Dr. Zadok's employment, Plaintiff's Council wrote to Prof. Jortner, President of the Board of AFBRI and demanded that Dr. Zadok vacate his position.

81.     Dr. Zadok's replacement is not only required because of his no longer being affiliated with Plaintiff, but also because Dr. Zadok is not fulfilling his obligations as treasurer of AFBRI.

82.     For a number of years, Plaintiff has not regularly received AFBRI's approved financial statements.   The responsibility for handling the issue belongs to Dr. Zadok, as the treasurer of AFBRI.  Despite repeated requests, no approved annual statements have been received, except for one financial statement for 2015-2016.   Plaintiff's involvement in the financial management and operations of AFBRI took place on a regular basis until 2017.  Plaintiff's General Director and CFO had access to AFBRI financial information until two years ago when Prof. Jortner and Dr. Zadok instructed that Plaintiff not be allowed access to any financial information.

83.     In addition, AFBRI's misuse of monies held for Plaintiff to pay $90,000 to Dr. Zadok's personal bank account, without the knowledge of the two US members of AFBRI's Board (as they explicitly told Plaintiff), is an improper use of charitable donations that further requires that Dr. Zadok be removed from the Board of AFBRI.  Dr. Zadok has an ongoing dispute with the Academy since 2017 over his severance pay.

84.     In order to ensure the proper management of AFBRI funds held for Plaintiff and to ensure the proper fulfillment of the commitment towards Plaintiff, it is essential that Dr. Zadok conclude his role at AFBRI and that a representative of Plaintiff replace him.

## CLAIM I
### (Declaratory Judgment)

85.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

86.     Plaintiff seeks a declaratory judgment with respect to its rights and entitlement to the charitable donations and other monies held by AFBRI.

87.     An actual case or controversy exists between Plaintiff and AFBRI regarding Plaintiff's rights and entitlement to the foregoing monies.

88.     Accordingly, Plaintiff is entitled to a declaration declaring its rights and entitlement to the charitable donations and other monies held by AFBRI.

## CLAIM II
### (Imposition of a Constructive Trust)

89.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

90.     Plaintiff agreed to raise funds for AFBRI based upon AFBRI's promise and agreement that it would forward donations intended for Plaintiff to Plaintiff on a timely basis.

91.     AFBRI also promised donors that funds donated to Plaintiff through AFBRI would be remitted to Plaintiff or used to finance Plaintiff's activities in Israel.

92.     Plaintiff would never have allowed AFBRI to hold and manage funds on its behalf without AFBRI's promise to transmit to it those funds in a timely manner.

93.     Plaintiff relied on AFBRI to act with integrity in fulfilling its responsibilities.

94.     A confidential relationship was created between AFBRI and Plaintiff by AFBRI's undertaking to raise funds for Plaintiff.  AFBRI betrayed this confidence when it took the money it is holding for the benefit of Plaintiff to use for its own purpose.

95.     The money that AFBRI has failed to forward to Plaintiff or "reclassified" for its own uses does not belong to AFBRI.  By using this money for its own purposes, rather than preserving it so that it is available to Plaintiff, the intended beneficiary, AFBRI has unjustly enriched itself.

96.     Accordingly, to prevent AFBRI's unjust enrichment, a constructive trust should be imposed on the funds donated to it for Plaintiff's benefit and AFBRI should be directed to account to Plaintiff for those assets.

## CLAIM III
### (Accounting)

97.     Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

98.     As described above, AFBRI is a fiduciary to Plaintiff and owes fiduciary duties to Plaintiff.

99.     AFBRI has breached the fiduciary duties it owes to Plaintiff.

100.    There has been no accounting by AFBRI concerning donations made to it for Plaintiff's benefit, although Plaintiff has demanded such an accounting on multiple occasions.

101.    Upon information and belief, AFBRI has committed numerous acts of mismanagement and breaches of fiduciary duty, for which it should be called to account.

## CLAIM IV
### (Breach of Fiduciary Duty)

102.    Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

103.    By virtue of AFBRI's role and its responsibility to forward to Plaintiff donations it receives on Plaintiff's behalf, and by virtue of the access it, and only it has, to information about donors and donations, AFBRI is a fiduciary to Plaintiff.

104.    As a fiduciary, AFBRI owed and continues to owe Plaintiff the duty to at all times act with the utmost good faith, loyalty and care.

105.    AFBRI is prohibited from placing itself in a position where its own interests will or potentially will come into conflict with the interests of Plaintiff.

106.    AFBRI breached its duty when it improperly withheld funds due Plaintiff and "reclassified" for its own benefit funds entrusted to its care solely for the benefit of Plaintiff.

107.    In addition, AFBRI breached its fiduciary duties by creating the possibility of a conflict of interest with Plaintiff and acting in its own self-interest.

108.    As a direct and proximate result of AFBRI's wrongful conduct, breaches and failure to discharge its fiduciary duties, Plaintiff has been damaged in an amount to be determined at trial.

109.    By reason of the foregoing, Plaintiff is entitled to a judgment against AFBRI for money damages in an amount to be proven at trial.

### CLAIM V
**(Conversion)**

110.    Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

111.    The funds identified in AFBRI's tax returns and financial statements as assets belonging to AFBRI do not belong to AFBRI, but rather are specifically for Plaintiff's benefit.

112.    Without right or authority, or Plaintiff's consent or knowledge AFBRI is treating these funds as its own.

113.    The funds constitute a specific and identifiable fund which AFBRI was obligated to hold for Plaintiff's benefit.

114.    Accordingly, AFBRI is liable to Plaintiff for conversion.

115.    By reason of the foregoing, Plaintiff is entitled to a judgment against AFBRI for money damages in an amount to be proven at trial.

### CLAIM VI
**(Unjust Enrichment)**

116.    Plaintiff repeats and realleges the paragraphs above as if fully set forth herein.

117.    By failing to convey to Plaintiff funds donated to or for the benefit of Plaintiff, and instead retaining those funds for itself, AFBRI has been unjustly enriched.

118.    AFBRI's unjust enrichment has been, and continues to be, at the expense of Plaintiff.

119.    Equity and good conscience require AFBRI to make restitution to Plaintiff for the funds donated to Plaintiff, which AFBRI has failed to convey to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against defendant AFBRI as follows:

A.    On Claim I, a declaratory judgment declaring Plaintiff's rights and entitlement to the monies held by AFBRI;

B.    On Claim II, the imposition of a constructive trust over assets donated to AFBRI for Plaintiff's benefit and an accounting for all those assets;

C.    On Claim III, that AFBRI be ordered to account to Plaintiff for donations made to AFBRI on behalf of Plaintiff;

D.    On Claim IV, damages in an amount to be proven at trial;

E.    On Claim V, damages in an amount to be proven at trial;

F.    On Claim VI, damages in an amount to be proven at trial;

G.    The costs of this action to the extent permitted by law, including attorneys' fees; and

H.    Such other and further relief as this Court deems just and proper.

Dated:  June 8, 2022

NUTTER MCCLENNEN & FISH LLP

By:_____

    Christopher J. Sullivan, Esq.
    cjsullivan@nutter.com

655 Third Avenue
New York, NY  10017
Telephone:  646-440-8000

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

A jury trial is hereby requested on all claims asserted herein as allowed by law.

24